UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |
|---|---|---|---|
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 1 of 8 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION [13]**

**I.
PROCEDURAL BACKGROUND**

On June 22, 2020, Plaintiffs BYD Company Ltd and Global Healthcare Product Solutions, LLC's ("BYD Global" and, collectively with BYD Company Ltd, "BYD") filed a Complaint against Defendants Alexander Khazai, Aaron Arredondo, James Vaughn, Dripstone LLC ("Dripstone"), and Roberto Banke asserting claims of unfair competition, trademark dilution, and false advertising under the Lanham Act, as well as California state law trademark dilution, unfair competition, false advertising, and trademark infringement. [Doc. # 1.]

On June 24, 2020, Plaintiffs filed an *Ex Parte* Application for a temporary restraining order ("TRO") and order to show cause ("OSC") why a preliminary injunction should not issue against Defendants, which the Court granted. [Doc. ## 13, 20.] As of the date of this Order, Plaintiffs have filed proofs of service of the TRO upon Defendants Dripstone, Khazai, Banke, and Arredondo.[1]  [Doc. ## 21, 22, 26, 27.]  Plaintiffs have also sufficiently shown that unserved party Vaughn has received actual notice of Plaintiffs' Complaint, *Ex Parte* Application for TRO and Preliminary Injunction, and the TRO.[2]  Rubin Supp. Decl. at ¶ 14 [Doc. # 25].

---

[1] The parties have stipulated to Arredondo's dismissal from this action.  [Doc. # 24.]

[2] Federal Rule of Civil Procedure 65(d)(2) provides that an injunction or TRO binds only parties and the parties' officers, agents, servants, employees, and attorneys who receive actual notice of it by personal service or otherwise.  Plaintiffs' counsel filed a declaration on June 30, 2020, indicating his efforts to give actual notice of the June 24, 2020 TRO on Defendants Khazai, Vaughn, and Banke, including e-mailing the TRO and related documents, the summons, and the Complaint to those individuals.  Rubin Decl. at ¶¶ 4-6 [Doc. # 22].  After the hearing on July 10, 2020, Plaintiffs' counsel filed a supplemental declaration describing personal service on Khazai and Burke and containing facts from which the Court can infer that Vaughn received actual notice—namely, that Plaintiffs e-mailed Vaughn a copy of the TRO at the same e-mail address Plaintiffs had e-mailed their TRO

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |
|---|---|---|---|
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 2 of 8 |

    Accordingly, the Court considers Plaintiffs' Application for a Preliminary Injunction against the remaining Defendants: Dripstone, Khazai, Banke, and Vaughn. No Defendant has filed any opposition to the Application. The Court held a hearing on July 10, 2020, at which only Plaintiffs appeared.

## II.
## BACKGROUND[3]

    Originally a renewable energy and electric car company, BYD formed BYD Global in early 2020 to produce respirator masks and other healthcare and medical devices during the COVID-19 pandemic. Zhuang Decl. at ¶¶ 4, 6 [Doc. # 18]. BYD asserts that it has become the single largest manufacturer of high quality respirator masks, such as N95 and KN95 masks, in the world, manufacturing 50 million masks per day using its "BYD" and "BYD Care" trademarks. *Id.* at ¶¶ 7, 10. Plaintiffs' respirator masks have secured certifications from agencies around the world, including the U.S. Federal Drug Administration ("FDA") and the U.S. National Institute for Occupational Safety and Health ("NIOSH"), the latter of which permitted Plaintiffs to enter a contract in April 2020 with the State of California to sell 150 million respirator masks per month for use by healthcare providers and first responders. *Id.* at ¶¶ 11, 14-15. BYD Global is the exclusive seller of BYD masks in North America. *Id.* at ¶ 17.

    The "BYD" mark and logo (showing the letters BYD in red font inside a red oval) are federally registered trademarks. *Id.* at ¶ 5; Compl. at ¶ 28 (providing an image of the logo). Plaintiffs have applied for additional registrations for its "BYD" and "BYD Care" marks for respirator and surgical masks and other personal protective equipment on an intent-to-use ("ITU") basis as reflected in (i) U.S. ITU Trademark Application Serial No. 88/840,575, which covers the BYD mark in standard characters for protective gear for medical use, namely, masks, gloves, clothing items, hand sanitizers, and medical thermometers; (ii) U.S. ITU Trademark Application Serial No. 88/840,620, which covers the BYD Care mark in standard characters for the same products; and (iii) U.S. ITU Trademark Application Serial No. 88/840,648, which covers the BYD Care mark in standard characters for the same products. These applications

---

Application, and Vaughn had replied to Plaintiffs' initial e-mail. Rubin Supp. Decl. at ¶¶ 11-15. Plaintiffs also e-mailed the TRO to Vaughn's attorney. *Id.* at ¶ 14.

    [3] The summary of facts is based on the sworn declarations and exhibits Plaintiffs submitted in support of their Application, not on the unverified allegations in Plaintiffs' Complaint. *See, e.g.*, *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction[.]"); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 2019) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 3 of 8 |

were all made on March 19, 2020 and are currently pending. Zhuang Decl. at ¶ 12. The "BYD" and "BYD Care" trademarks have been publicized in news articles about the company's mask production. *Id.* at ¶¶ 13, 15.

Defendants have allegedly manufactured, marketed, or offered to sell masks that are falsely labeled with the "BYD" and "BYD Care" marks despite not undergoing the quality control and regulatory approval processes that Plaintiffs' authentic masks do. Compl. at ¶¶ 3-4.

On May 22, 2020, Plaintiffs were informed by Alex Pal, Chief Counsel at the California Governor's Office of Emergency Services ("Cal OES"), that his office received a communication from Defendant Vaughn offering Plaintiffs' N95 respirator masks for sale, though Vaughn is not authorized by Plaintiffs to sell Plaintiffs' masks. Zhuang Decl. at ¶¶ 28-29; *id.*, Ex. 2. The "spec sheets" Vaughn sent to Cal OES included images containing Plaintiffs' "BYD" marks. *Id.* at ¶ 29; *id.*, Ex 3. On a phone call with Plaintiffs' counsel, Vaughn represented that he had ten million BYD NIOSH-certified N95 masks. *Id.* at ¶ 30.

On May 28, 2020, Plaintiffs were informed by a BYD customer Progressive Animal Wellness, a veterinary clinic, that it had ordered and received a shipment of BYD-branded KN95 respirator masks that it suspected were counterfeit. The customer attached photographs of the masks, which are included in the Complaint and demonstrate that the masks were affixed with the BYD trademark and logo. Shagensky Decl. at ¶¶ 2, 4-5 [Doc. # 15]; *id.*, Ex. 2; Zhuang Decl. at ¶¶ 36-38. Plaintiffs assert that those masks appear to be an earlier version of the KN95 masks that BYD never sold in the United States and were not approved for sale in the United States. Zhuang Decl. at ¶ 37. The representative from Progressive Animal Wellness informed Plaintiffs that she had purchased these masks from Dripstone's website. Shagensky Decl. at ¶ 3; *id.*, Ex. 1. Upon placing her order, the Progressive Animal Wellness representative received an order confirmation from Dripstone that described the product as an "FDA approved BYD KN95 Particulate Respirator Face Mask (10 pieces)." *Id.*, Ex. 1. As of June 22, 2020, when Plaintiffs filed the *Ex Parte* Application for a TRO and for a Preliminary Injunction, BYD-branded KN95 masks were still offered for sale on Dripstone's website despite the fact that Dripstone is not affiliated with BYD and the masks it offers are not approved for sale in the United States. *Id.* at ¶¶ 70-71.

On June 8, 2020, a business owner who had been in discussion with Plaintiffs about purchasing their products began receiving messages on the Whatsapp platform from Defendant Khazai offering to sell boxes of BYD-branded N95 masks, including pictures of boxes and "cut sheets" bearing the "BYD" mark. Zhao Decl. at ¶¶ 2-3 [Doc. # 17]; *id.*, Ex. 1 [Doc. # 17-1]. Over the course of several weeks, Khazai sent five different videos via Whatsapp of boxes full of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |
|---|---|---|---|
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 4 of 8 |

BYD-branded masks and, confused whether Khazai may be selling authentic BYD masks, the customer contacted Plaintiffs. *Id.* at ¶¶ 4-5.

On June 15, 2020, a BYD Global customer forwarded to a BYD employee a video the customer had received from Defendant Banke, who is not an authorized seller of Plaintiffs' masks, depicting hundreds of boxes of masks bearing the "BYD" and "BYD Care" marks to sell. Zhuang Decl. at ¶¶ 39-40; Smoley Decl. at ¶ 4 [Doc. #16]. Plaintiffs believe those masks are counterfeit because BYD Global has not sold masks to Banke, nor would Banke or anyone Banke is working with have conceivably been able to purchase the amount of masks shown in the video on the secondary market. Zhuang Decl. at ¶ 43.

### III.
### LEGAL STANDARD

A plaintiff seeking injunctive relief must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Fox Broad. Co., Inc. v. Dish Network LLC*, 723 F.3d 1067, 1072-73 (9th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008)). An injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in [his] favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

### IV.
### DISCUSSION

#### A. Likelihood of success on the merits

Plaintiffs' state law trademark infringement claims are governed by the same legal standards as their Lanham Act trademark claims. *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (applying the same standard to false designation of origin claims under the Lanham Act). The Court therefore examines whether Plaintiffs have shown likelihood of success on the merits under the Lanham Act trademark test, which requires a plaintiff to show that (1) it has a valid, protectable trademark; and (2) the defendant's use of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |

| | | | |
|---|---|---|---|
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 5 of 8 |

mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

### 1. Protectable mark

A plaintiff can establish that it owns a protectable interest in one of three ways: (1) registering its mark with the United States Patent and Trademark Office; (2) showing that it has a descriptive mark that has acquired a secondary meaning in the market; or (3) showing that it has a suggestive mark, which is inherently distinctive and protectable. *Id*. at 969-70. Plaintiff BYD's registration of the "BYD" mark is *prima facie* evidence of BYD's ownership. While Defendants can "rebut the presumption of ownership with evidence establishing its own prior use in commerce of the registered mark," it has not done so. *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). In any event, it is far more likely that Plaintiffs established their prior use in commerce of their own registered "BYD" mark on respirator masks and surgical masks due to the advertising, sales, and media coverage of those products bearing the "BYD" mark starting in early 2020. Zhuang Decl. at ¶¶ 4, 6, 10, 15.

Thus, Plaintiffs have met their burden to show they own a protectable interest in the "BYD" mark. Because every box of masks offered for sale by Defendants in this action bears the "BYD" mark, for purposes of the preliminary injunction, the Court need not determine whether Plaintiffs also own a protectable interest in the "BYD Care" mark. *See* Zhuang Decl., Ex 3; Shagensky Decl., Ex. 2; Smoley Decl. at ¶¶ 4-5; Zhao Decl., Ex. 1; *see also League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014) (analyzing whether the plaintiffs "are likely to succeed on the merits of *any* of their claims under prong one of *Winter*") (emphasis added).

### 2. Likelihood of confusion

To evaluate whether the use of a mark is likely to confuse consumers, courts consider eight non-exhaustive factors (the "*Sleekcraft* factors") whose relative importance will vary from case to case:

> (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5530-DMG (AGRx)** | Date | July 10, 2020 |
| Title | *BYD Company Ltd v. Alexander Khazai, et al.* | Page | 6 of 8 |

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The inquiry may proceed in any order, and the Court need not address every factor. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009).

Here, Plaintiffs' exact mark is on goods sold on Dripstone's website, on the "spec sheet" of the goods Vaughn offered to sell to Cal OES, and on the boxes shown in the videos and pictures Banke and Khazai sent to Plaintiffs' customers, and the goods are advertised as identical to those legitimately sold by BYD. The mark is also strong, given its distinctive font and lack of relationship to the functionality of the products.[4] Plaintiffs have produced evidence of actual customer confusion resulting from Defendants' use of the BYD mark. *See* Shagensky Decl. at ¶¶ 4-5 and Ex. 2; Zhuang Decl. at ¶ 36 and Ex. 2; Smoley Decl. at ¶ 5; Zhao Decl. at ¶ 5. Purchasers of respiratory masks are likely to exercise some degree of care in examining masks for compliance with certain safety specifications given the public health consequences, and yet there is evidence that consumers are still confused as to whether the masks offered for sale by each Defendant are approved BYD respirator masks.

Plaintiffs have thus established a likelihood of success on the merits of trademark infringement claims against each Defendant.[5]

**B. Irreparable harm**

Irreparable harm is harm that "can seldom be adequately remedied by money damages and is often permanent or at least of long duration." *Alliance for the Wild Rockies*, 632 F.3d at 1135. In a trademark infringement case, "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enters., LLC v. Fla.*

---

[4] "BYD" is an acronym for "Bring Your Dream." Zhuang Decl. at ¶ 4. The phrase appears to be an arbitrary mark[]—actual words with no connection to the product[,]" and the acronyms can be considered "fanciful marks—made-up words with no discernable meaning[.]" *Fortune Dynamic*, 618 F.3d at 1033 (internal citations, quotation marks, and brackets omitted).

[5] It is not clear whether Dripstone is offering counterfeit masks for sale or whether all of the masks sold on its website were originally manufactured by Plaintiffs in China. *See* Zhuang Decl. at ¶ 37 (noting that the masks in the photograph sent by the veterinary clinic customer appeared to be earlier versions of a BYD KN95 mask not approved for sale in the United States). But because the standards for claims of trademark infringement or false designation of origin[5] are the same, and both claims are pled in Plaintiffs' Complaint, Plaintiffs have established a likelihood of success on the merits of either claim. The existence of this factual question does not preclude granting a preliminary injunction against Dripstone.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5530-DMG (AGRx) | Date | July 10, 2020 |
| Title | BYD Company Ltd v. Alexander Khazai, et al. | Page | 7 of 8 |

*Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). The Court must make specific factual findings of irreparable harm.

Plaintiffs are the sole North American distributors of their masks and have taken substantial steps to secure governmental certifications for their masks in order to enter large contracts with the State of California and other entities and to ensure consumers' faith in the quality of their masks. Zhuang Decl. at ¶¶ 15-17. Plaintiffs' certifications and contracts have received wide media coverage, and at least one consumer believes in "BYD[']s good name and FDA standing" in selling respirator masks. Shagensky Decl., Ex. 2. The Ninth Circuit has found that "extensive and targeted advertising and unsolicited media, along with tight control of the supply of the [trademarked product]" give rise to reputational interests with "intangible benefits" that may be irreparably harmed without an injunction of activity that allegedly violates the trademark. *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57 (9th Cir. 2018). Similarly, the court has found a plaintiff showed irreparable harm due to loss of control over business reputation in the absence of injunctive relief where the defendant used the plaintiff's trademarks to release an unapproved line of cosmetics products. *See 2Die4Kourt v. Hillair Capital Mgmt., LLC*, 692 F. App'x 366, 369 (9th Cir. 2017). In this analogous situation, Plaintiffs have shown that their loss of control over the supply of "BYD" branded respirator masks, including the sale of unapproved, potentially ineffective masks, will result in intangible harm to their business reputation, particularly given the exigencies of the COVID-19 crisis in the United States.

C. Balance of equities

Defendants' failure to respond makes it difficult for the Court to ascertain what equities may favor denying Plaintiffs' application. It is well-established, however, that "harm caused by illegal conduct does not merit significant equitable protection." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017). Not only are Defendants' sales of masks bearing the "BYD" mark not authorized by Plaintiffs, but the masks sold are not FDA-approved despite being represented as such. Under these circumstances, any losses Defendants may suffer due to an injunction do not merit equitable consideration.

Given the irreparable harm Plaintiffs are likely to suffer to its brand and reputation in the absence of a preliminary injunction, the balance of equities tilts in Plaintiffs' favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-5530-DMG (AGRx) | Date | July 10, 2020 |
|---|---|---|---|
| Title | BYD Company Ltd v. Alexander Khazai, et al. | Page | 8 of 8 |

### D. Public interest

The public interest in an injunction against selling counterfeit or unapproved masks is also clear. Selling subpar masks in a global pandemic puts anyone who uses such a mask, including potentially health care professionals, at greater risk of transmitting or being exposed to the highly contagious virus causing COVID-19. Permitting such faulty masks to circulate would further confuse consumers over what types of masks are more highly protective, and "[t]he public has an interest in avoiding confusion . . . ." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009).

Accordingly, each factor weighs in favor of granting Plaintiffs' requested injunctive relief.

### E. Bond

Under Federal Rule of Civil Procedure 65(c), the Court may require Plaintiffs to post a bond for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully restrained, pending final judgment in this case. Fed. R. Civ. 65(c).
"The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Based on the foregoing analysis, the Court waives the bond requirement because Defendants are not likely to suffer harm as a result of being enjoined from engaging in illegal conduct.

## IV.
## CONCLUSION

In light of the foregoing, Plaintiffs' Application for a Preliminary Injunction against all remaining Defendants is **GRANTED**.

**IT IS SO ORDERED.**